IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NICHOLAS M. MOSS,<br><br>Petitioner,<br><br>vs.<br><br>ROB JEFFREYS,<br><br>Respondent. | 8:20CV474<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on its own motion. For the reasons that follow, the Court will direct Respondent to provide supplemental briefing as set forth below.

Nicholas M. Moss ("Petitioner"), filed a petition for habeas relief pursuant to 28 U.S.C. § 2254 (the "Petition"). Filing No. 1. Upon preliminary review of the Petition this Court grouped Petitioner's arguments in the Petition into seven claims. *See* Filing No. 6 at 1–2. Relevant to this Memorandum and Order, Claim One addresses the use of a stun-style shackling device (the "Stun-Belt") as a means of physical restraint that Petitioner was required to wear throughout his trial. This Court broke down Claim One into five subparts, summarizing Subparts One and Three as addressing alleged trial court error, Subparts Two and Four as addressing alleged trial counsel error, and Subpart Five as addressing error of direct appellate counsel. *Id.* at 1.

At the crux of Claim One is the use of the Stun-Belt which discharged in front of the jury for unknown reasons during a government witness's testimony, delivering a shock to Petitioner in the jury's presence (the "Shock-Incident"). Filing No. 1 at 5. In Claim One Petitioner argues that the wearing of the Stun-Belt throughout his trial was prejudicial and resulted in violations of multiple Constitutional rights including the right to due process,

his right to a fair trial, and his right to participate in his own defense. He submits the trial court abused its discretion in requiring him to wear the Stun-Belt and that his counsel erred in failing to object to its use. Specifically, in Subpart One of his Petition, Petitioner argues that he was forced to wear the Stun-Belt at his trial both before and after the Shock-Incident without the trial court having made any findings regarding its necessity. *Id.* at 29–33. In Subpart Three Petitioner argues that the trial court should have *sua sponte* done something to address the prejudicial impact to Petitioner's constitutionally guaranteed rights resulting from the Shock-Incident but failed to do so. *Id.* at 25–28, 30–32. In Subpart Two Petitioner alleges ineffective assistance of trial counsel for failing to object to the use of the Stun-Belt. *Id.* at 21–33.

In support of his position addressing trial court error, in relevant part here, Petitioner cites to the United State Supreme Court's holding in *Deck v. Missouri*, 544 U.S. 622 (2007), as well as *United States v. Durham* 287 F.3d 1297 (11th Cir. 2002), *Estelle v. Williams*, 425 U.S. 501, 503, (1976), and several other federal appellate decisions and state court cases addressing stun-style devices and shackling at criminal trials in the context of the protections afforded to him by the United States Constitution.[1] Filing No. 1 at 22, 29–33. Of particular relevance to Petitioner's Subparts One, Two, and Three claims is an understanding of whether at any time the trial court and the parties addressed the reason for the use of the Stun-Belt.[2]

---

[1] This Court notes that Petitioner did not cite to *Deck* either on direct appeal or postconviction when addressing his claims relating to the Stun-Belt, instead citing to *Durham*, a pre-*Deck* decision also addressing the constitutional concerns with shackling in the specific context of the use of stun-style restraints at criminal trials.

[2] When reviewing a trial court's decision to use additional security measures, the question is "whether the grounds for additional security which existed at the time the security measures were taken justify any prejudice which they created." *Hellum v. Warden, U.S. Penitentiary Leavenworth*, 28 F.3d 903, 907 (8th Cir. 1994) (citing *Gilmore v. Armontrout*, 861 F.2d 1961, 1071 (8th Cir. 1988); *Wilson v. McCarthy*, 770 F.2d 1482, 1484 (9th Cir. 1985); *Harrell v. Israel*, 672 F.2d 632, 636 (7th Cir. 1982); *Payne v. Smith*, 667 F.2d

2

The Supreme Court in *Deck*, tasked with addressing the use of restraints in the penalty phases of a capital trial, held that "the Constitution forbids the use of *visible* shackles during the penalty phase, as it forbids their use during the guilt phase, unless that use is 'justified by an essential state interest'—such as the interest in courtroom security—specific to the defendant on trial." *Deck*, 544 U.S. at 624. In support the Court explained that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id.* at 629. Finally, the Court stated that the ordering of a criminal defendant to wear shackles that will be seen by the jury without adequate justification omits any requirement that a criminal defendant demonstrate actual prejudice in order to make out a due process violation, instead passing the burden onto the state to prove "beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained." *Id.* at 635 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

In the post-*Deck* decision of *United States v. Honken*, the Eighth Circuit applied the abuse of discretion factors set forth in *Hellum* when determining whether the trial court abused its discretion by shackling a criminal defendant via bolting shackles to the floor

---

541, 544 (6th Cir. 1981), cert. denied, 456 U.S. 932 (1982)). As such, any discussion of the use of the Stun-Belt by the trial court including any reason to do so is relevant to Subparts One and Three.

*Strickland v. Washington* requires a federal habeas court to determine whether a petitioner's counsel's performance was below the objective standard of reasonableness and the defendant was prejudiced by counsel's substandard performance. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In so doing a court must consider whether the challenged action (in this case to forgo objecting to the decision of the trial court to utilize the Stun-Belt if the reasons for doing so were discussed with counsel) "'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)). As such, any discussion of the use of the Stun-Belt involving Petitioner's trial counsel is germane to Petitioner's Subpart Two claim.

3

and forcing him to wear a stun-style restraint during his trial. *United States v. Honken*, 541 F.3d 1146, 1162-64 (8th Cir. 2008) ("*Honken II*"), *cert. denied*, 558 U.S. 1091 (2009). Specifically in relation to the stun-style restraint, the defendant argued that its use in addition to the more traditional shackling "interfered with his right to communicate with counsel and participate in his own defense," and constituted an "impermissible 'piling on'" of extra and unnecessary security measures, and cited to *Durham* in support. *Id.* at 1162.

In rendering its decision addressing the traditional shackles, the Eighth Circuit focused on two main constitutional concerns of shackling: "(1) the shackles could impede the defendant's ability to participate in his defense, and (2) the shackles could suggest to the jury the defendant is guilty." *Id.* (citing *Hall v. Luebbers*, 296 F.3d 685, 698 (8th Cir. 2002) (citations omitted)). In relation to the use of traditional leg-iron shackles, the Court found that the use of the leg-irons were justified as the trial court had held a hearing and made findings regarding their use, that efforts were made to minimize the jury's awareness of their use, and that the bolting of shackles allowed for the defendant to move and to communicate with his counsel with the same relative ease he would have had if he had not been shackled. *Id.* at 1163 (citing *Hellum*, 28 F.3d 908–09; *Zeitvogel v. Delo*, 84 F.3d 276, 283 (8th Cir.1996)).

In addressing the trial court's decision to shackle the defendant with a stun-style device as "back up" to the traditional shackles bolted to the floor, the Eighth Circuit found the trial court did not abuse its discretion in also utilizing a stun-style restraint given the defendant's prior escape attempts, martial arts training, and threats against witnesses, security officers, and attorneys. *Id.* at 1164. In so doing the court recounted, without criticism, the district court's conclusion that the use of stun-style shackles did not violation

4

the defendant's Sixth and Fourteenth Amendment rights based on the holding in *United States v. Durham*, 287 F.3d 1297, 1305 (11th Cir. 2002), that the use of a stun belt, even if not visible to the jury, "should be subjected to close judicial scrutiny, because of its potentially disruptive effect on the defendant's rights and the fairness of the factfinding process." *Id.* at 1164 (quoting *United States v. Honken,* 541 F.Supp.2d 1010, 1037 (N.D. Iowa 2004) ("*Honken I*")). Ultimately the court found that because a hearing had been held and findings had been made that the decision to also use a stun-style shackle in addition to the traditional shackles was not an abuse of discretion. *Id.*

While this Court has made no determination as to whether any of Petitioner's arguments in Claim One may be addressed by this Court on their merits, with these principles in mind it is clear that fundamental to addressing Subparts One through Three, if they were to proceed to review here, is whether the trial court made any findings regarding the use of the Stun-Belt at any time during Petitioner's trial either on or off the record. This information is necessary for addressing both his trial court error and at least one of his ineffective assistance of counsel claims.

However, having reviewed the record and the arguments of the parties, it is unclear if the initial use of the Stun-Belt was due to the policy of the trial court or the policy of courtroom security personnel, or if the trial court was even aware of the Stun-Belt's use when Petitioner's trial began. What is clear is that no findings were made relating to the Stun-Belt's use that became part of the record at any point in the trial. What is also clear is that following the Shock-Incident the trial court was not only aware of the use of the

5

Stun-Belt but also required Petitioner to be reaffixed with a Stun-Belt[3] prior to the trial's resumption, and that Petitioner's counsel made no objection to its use at that time on the record. See Filing No. 10-17 at 138–39.

For his part, Petitioner argues that the use of the Stun-Belt was due to local law enforcement policy and was not utilized via a policy or decision by the trial court. Filing No. 1 at 5; *see also* Filing No. 10-8 at 25 (alleging it was the policy of the Sarpy County Sheriff's Department to affix and use the Stun-Belt at the beginning of Petitioner's trial). Petitioner also contends that the trial court never made any findings which would justify the use of the Stun-Belt. Filing No. 1 at 33. Respondent did not address either assertion. *See* Filing No. 14 at 7–8, 16–21.

For the purpose of providing a thorough evaluation of the claims and arguments of the parties this Court finds it necessary for Respondent to provide a response to Petitioner's assertions.

IT IS THEREFORE ORDERED:

1. Respondent shall have through and until **April 7, 2025** to submit supplemental briefing on the following issues only: (1) whether Respondent does or does not agree with Petitioner's claim that the Stun-Belt was affixed to Petitioner at his trial due to a policy other than a policy instituted by the trial court, and (2) whether Respondent does or does not agree with Petitioner's claim that the trial court did not address and/or articulate the reasons for the Stun-Belt's use at any time during Petitioner's trial. To the

---

[3] It is unclear from the record if the same Stun-Belt was used after the Shock-Incident or if a new stun-style restraint was used, but for this Court's purposes resolution of that issue is unnecessary.

extent Respondent does not agree, he need only provide a discussion of facts, which if proven, support his contention.

Moreover, while the Court is wholly aware that Respondent's position is that all of Petitioner's arguments addressing the Stun-Belt in Claim One are procedurally defaulted and are therefore not reviewable by this Court on their merits either due to a failure to present them to the state courts or via application of the independent and adequate state law doctrine, s*ee* Filing No. 14 at 16–21 (citing the entirety of the Nebraska appellate court's discussion of the claims addressing the stun-belt and contending all subparts of Claim One are procedurally defaulted), Respondent should keep in mind that this Memorandum and Order makes no findings regarding procedural default or the merits of any of Petitioner's claims and seeks no additional argument in support of Respondent's position on either issue. In providing his response, therefore, Respondent shall not advance further argument in support of his respective position regarding fair presentment and exhaustion, procedural default, or the merits of any Subparts of Claim One (or any claims) in his supplemental briefing. Finally, any such arguments that fall outside the very limited scope of the supplemental briefing ordered in this Memorandum and Order shall not be considered by this Court when addressing the Petition.

2. Petitioner shall not submit any supplemental briefing in response to this Memorandum and Order and need not otherwise respond.

3. To the extent this Court deems that an evidentiary hearing may be necessary on either of these issues after Respondent submits his supplemental brief, such a determination shall be made in a separate order. As such, neither party may

7

submit briefing addressing evidentiary hearing standards or any argument for or against the holding of an evidentiary hearing in response to this Memorandum and Order.

4. The Clerk's Office is directed to set a pro se case management deadline in this case using the following text: **April 7, 2025:** Check for Respondent's supplemental brief.

Dated this 7th day of March, 2025.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Court